646 So.2d 1104 (1994)
Joyce Spears, Wife of/and Samuel SPEARS, Individually and on Behalf of Their Minor Son, Justin SPEARS
v.
JEFFERSON PARISH SCHOOL BOARD.
No. 94-CA-352.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1994.
*1105 Andree H. Greenleaf, Grant and Barrow, Gretna, for defendant/appellant.
David T. Pick, Greenberg & Dallam, Gretna, for plaintiffs/appellees.
Before GRISBAUM, DUFRESNE, and GOTHARD, JJ.
GOTHARD, Judge.
This appeal arises out of an action filed by the plaintiffs, Joyce and Samuel Spears individually and on behalf of their minor son, Justin, for injuries sustained while Justin was a kindergarten student at Woodland West Elementary School, a part of the Jefferson Parish School System. Liability of the defendant was established by a joint stipulation of the parties and the matter went to trial on the issue of quantum. In due course the trial court rendered judgment, accompanied by written reasons, in favor of the plaintiffs as follows:

 Past treatment expenses $5,498.00
 Future treatment $2,160.00
 General damagesJustin $100,000.00
 Loss of Consortium Mr. and Mrs.
 Spears $5,000.00 each $10,000.00
 Total award $117,658.00
Defendant appeals that judgment.

FACTS
On February 28, 1989, Justin Spears was a kindergarten student at Woodland West Elementary School. Because it was a rainy day, the students were seated on the floor of the Cafeteria watching a movie during their regularly scheduled Physical Education class under the supervision of Coach John Brooks and Coach Johnny Peyton. Justin and two of his friends began to be slightly disruptive. At that time Coach Brooks called the boys over to sit near him. The boys began to play with his hair and his ears. Coach Brooks told the boys that if they did not stop annoying him he would "kill them". Because the coach was experiencing management problems with the three boys, he took two of them into an adjacent office with him while he did some paperwork, leaving the rest of the class to watch the movie. Justin stayed behind talking to Coach Peyton. The boys began asking Coach Brooks how he would kill them. Coach Brooks told them he would probably tie the jump rope around their neck and push them off a chair in the office. Because Justin was talking to Coach Peyton during this discussion, Coach Brooks ask the boys if they wanted to play a trick on Justin and they agreed.
The testimony differs as to the events that followed, but it is clear that Coach Brooks led Justin to believe that his friends were dead. He told Justin he had hanged them by their neck with the jump rope, and at least one of the boys was lying on the floor pretending to be dead. When Justin saw the boy lying there he became upset and began to cry. Coach Brooks told Justin it was just a joke and that the boys were not really dead.
Plaintiffs introduced live testimony from Justin and both of his parents. They also introduced depositions from two psychologists *1106 who treated Justin. According to the evidence, Justin was a normal, well-adjusted five-year-old before the incident. However, in the weeks following the incident he began to exhibit infantile behavior. He refused to go to the bathroom alone and refused to wipe himself. He was afraid that Coach Brooks would come out of the mirror in the bathroom and harm him. Justin would no longer sleep in his own room. He became overly dependent on his mother and was not comfortable when she was out of sight.
Justin was treated by Dr. Lynne Shwery, a psychologist at Children's Hospital. Dr. Shwery testified at her deposition that she treated Justin from the time of the incident until he moved with his family to Virginia in June, 1991. She opined that Justin had "experienced an event that was outside the range of usual human experience and that would be markedly distressing to almost anyone". She diagnosed Justin as having Post-Traumatic Stress Disorder and explained that Justin was fearful and anxious. He had come to the realization that the world was not a safe place and that all adults could not be trusted.
From the time of the family's relocation to Virginia in 1991, Justin was treated by Dr. Tonya Fridy; that treatment was still on going at the time of trial. Dr. Fridy's professional diagnosis concurred with that of Dr. Shwery's. Additionally, Dr. Fridy stated that Justin had separation anxiety and social phobia disorder and would probably need three to five more years of therapy.
The defendant offered testimony from their own expert, Dr. Vincent Carbone. He conducted an evaluation of Justin and concluded that Justin was "a very anxious child who was very fearful of things in his environment", but Dr. Carbone did not agree that Justin was suffering from Post-Traumatic Stress Disorder.
After considering all of the evidence, the trial court rendered judgment in favor of plaintiff, accompanied by written reasons which included the finding that "this child has been effectively robbed of a normal, carefree childhood due to the careless actions of the coach".
In brief to this court the defendant assigns nine errors which can be placed into three arguments. First, it is argued that the trial court erred in its findings of fact concerning the magnitude of Justin's injuries and thus the award of damages is excessive. Second, it is argued that the award of loss of consortium to the parents is incorrect. The final argument concerns an evidentiary ruling on the defendant's assertion that Justin's parents failed to mitigate the damages.
When reviewing the factual findings of the trial court we are restricted by the manifest error standard of Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflicting testimony, reasonable inferences of fact should not be disturbed, even when the appellate court may feel its own evaluations and inferences are as reasonable as those of the trial court. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Id., at 844, Hirsch v. Winn Dixie Louisiana, Inc., 635 So.2d 777 (La.App. 5 Cir.1994), writ denied 94-1375 (La. September 16, 1994), 642 So.2d 196. Further, when factual findings are based on credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact. Rosell, supra. The rule that questions of credibility are for the trier of fact also applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990). Here the opinions of experts are supported by sound reasons and there is ample support for the trial court's findings of fact. Consequently, we find no manifest error in the trial court's reliance on the expert testimony in its formulation of factual findings in this matter.
Our review of the amount awarded as general damages is subject to Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. den. ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), in which the Supreme Court, stated:
... an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular *1107 case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Given the circumstances of this case and the standard of review mandated by the Supreme Court, we do not find the trial court's award of general damages in the amount of $100,000.00 to Justin was an abuse of discretion. For the same reasons we cannot find that the award of $2,160.00 for future therapy was an abuse of discretion. Therefore, we will not overturn those portions of the judgment.
The defendant also complains of the award of $5,000.00 each to Justin's parents for loss of consortium. Prior to trial the parents stipulated that they did not have an individual cause of action which met the requirements of C.C. art. 2315.6 and LeJeune v. Rayne State Branch Hospital, 556 So.2d 559 (La.1990), but reserved their right to seek damages for loss of consortium. At trial the plaintiffs introduced evidence concerning the loss of consortium claim.
In reasons for judgment the trial court stated:
With respect to the claim for loss of consortium filed on behalf of Mr. and Mrs. Spears the Court believes that they personally have suffered heartache and anxiety as a result of the trauma to their child. The Spears have enjoyed little quality time alone because of Justin's need to be constantly in their physical presence. The Court believes that $5000.00 per parent is adequate to compensate them for their loss of consortium.
Defendant argues that the factual finding by the trial court does not warrant an award for loss of consortium, but rather, an award for mental anguish under LeJeune, supra, which is precluded by the stipulation.
Loss of consortium in the context of the parent/child relationship means loss of the aid, assistance and companionship of the child, or loss of affection, society and service. Lee v. USAA Cas. Ins. Co., 540 So.2d 1083, 1093 (La.App. 1 Cir.1989), reconsideration denied 544 So.2d 385 (La.1989). We agree with the defendant's assertion that mental anguish suffered by the parents because of the injury to their son is not compensable in a loss of consortium claim. Further, we agree that the trial court was incorrect in awarding damages based on the reasons stated.
However, we find that the record contains evidence to support a claim for loss of consortium. It is clear from the record that the incident adversely affected the relationship between Justin and his parents. The child, who was developing normally before the incident, became a behavior problem as a direct result of defendant's actions. Injuries incurred by the child rendered the family life difficult afterward since Justin no longer wished to go on family outings. Consequently, we do not find error in the award on loss of consortium damages to the parents.
The final assignment of error concerns certain evidentiary rulings made by the trial court during the testimony of defense expert witness, Dr. Vincent Carbone. During that testimony the defendant attempted to show that the Spears were overprotective parents who projected their parental fears to Justin, making the injury worse than it might have been and slowing the child's recovery. The plaintiffs' counsel objected to this line of questioning, arguing that the evidence would be only relevant to show a failure to mitigate the damages or to establish causation. Plaintiffs' counsel further argued that since failure to mitigate damages is an affirmative defense and had not been pled, and causation was not at issue, the evidence was inadmissible. The trial court sustained the objection, but allowed the defendant to proffer the evidence.
On appeal defendant argues that the trial court erred in ruling that mitigation of damages is an affirmative defense and that the Spears did not fail to mitigate their damages. Also, defendant argues that the proffer offered at the end of the testimony disrupted the flow of the evidence and prejudiced the defense in the presentation of its case.
*1108 In the reasons for judgment the trial court stated:
Although the defendants did not specifically plead mitigation of damages as a defense in their answer the issue was clearly presented in the pre-trial order. Therefore, the Court did consider the evidence presented. Nevertheless, the Court does not believe that the Spears failed to mitigate their damages. Professional counseling was immediately sought for Justin. Based on the evidence, the Court believes that the Spears made a good faith effort to implement the recommendations of the therapists. Dr. Schwery (sic) testified that she did not consider either Mr. or Mrs. Spears refractory to treatment suggestions. She testified that the parents had some heightened anxiety because they did not feel that they were dealing with a little boy who was being bad but a little boy who was scared. Therefore, Dr. Schwery (sic) simply suggested that they modify their goals and work at a more gradual pace. The Court believes that the Spears have made reasonable attempts to mitigate their damages.
Because the trial court considered the mitigation to be a viable issue before the court and made a judgment based on a factual finding supported by evidence contained in the record, we cannot find error in the evidentiary rulings at trial or the finding the Spears did not fail to mitigate the damages. Nor do we find any merit to defendant's argument that the offer of the proffer at the end of the expert's testimony upset the flow of evidence to such an extent that it prejudiced the presentation of defendant's case. The defendant was allowed to offer all of the evidence it wished to offer and it was all considered by the trial court.
For the foregoing reasons the judgment of the trial court is affirmed. Costs are assessed to the appellant.
AFFIRMED.